**In re Don Young DAVIS, Debtor.**

**Don Young DAVIS, Plaintiff–Appellant,**

v.

**Roe J. DAVIS, Defendant–Appellee.**

**No. 89–8616.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 7, 1990.

Thomas H. Hyman, Cordele, Ga., for plaintiff-appellant.

Timothy O. Davis, Gardner, Willis, Sweat & Goldsmith, Albany, Ga., for defendant-appellee.

Before FAY and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

This is an appeal from the district court's order affirming the bankruptcy court's order which denied the Debtor/Appellant's discharge. We affirm.

In 1983, the Appellee, Roe Davis, and the Debtor/Appellant, Don Davis, opened a pharmacy business. Roe Davis owned fifty-one percent of the stock, while Don Davis owned the remaining forty-nine percent. Both Roe and Don Davis, who are unrelated, individually signed promissory notes for the money they borrowed to operate the business. The business failed and was closed in October 1985. The final bank loan used to finance the pharmacy was payable in October 1986. Two days after the due date, the Debtor/Appellant discussed with his attorney his inability to pay this note and his concern about possibly losing his home. At the suggestion of his attorney, the Debtor/Appellant deeded his

one-half interest in his home to his wife. Shortly thereafter, in November 1986, Appellee Roe Davis paid off the outstanding balance on the bank note, amounting to $118,395.24.

Appellee Roe Davis sued the Debtor/Appellant for contribution and obtained a default judgment for $58,694.24. Two days after obtaining this judgment, the Appellee filed a fraudulent conveyance action against the Debtor/Appellant seeking to set aside the transfer of the Debtor's interest in his home to his wife. Upon service of this complaint, the Debtor/Appellant consulted his attorney, who advised him to see a bankruptcy lawyer. The Debtor/Appellant did so, and was advised to reverse the transfer of his home to his wife. The necessary deed was prepared, executed and recorded. The day following recordation, the Debtor/Appellant filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code.

In his bankruptcy schedules, the Debtor/Appellant disclosed the existence of these transfers, which had taken place within one year of the bankruptcy filing. In April 1987, the Appellee filed an adversary proceeding seeking to deny the Debtor/Appellant's discharge under section 727(a)(2)(A) of the Code. This section provides, in relevant part,

> (a) The court shall grant the debtor a discharge, unless—

> (2) The debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... or permitted to be transferred ...

> (A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).

The matter was tried in December 1987. The bankruptcy court found that the transfer of property of the Debtor/Appellant to his wife was made with the intent to hinder, delay or defraud a creditor as proscribed by section 727(a)(2)(A), notwithstanding retransfer of the property completed the day before the petition was filed. The Debtor/Appellant contended that discharge should not be denied under section 727(a)(2)(A), since the transfer in question did not in fact diminish the assets available to creditors.[1] In a subsequent memorandum opinion, the bankruptcy court rejected this argument, relying chiefly on *Future Time, Inc. v. Yates*, 26 B.R. 1006 (M.D. Ga.), *aff'd mem.*, 712 F.2d 1417 (11th Cir. 1983), and denied the Debtor/Appellant a discharge. Debtor/Appellant Davis appealed this order to the district court, which affirmed.

In his appeal to this court, the Debtor/Appellant identifies two issues. First, the Debtor/Appellant argues the district court erred in affirming the denial of discharge in light of the fact that the Debtor/Appellant's transfer of property to his wife did not in fact reduce the assets available to creditors. We disagree in light of *Future Time*. In *Future Time*, the district court affirmed the denial of the debtor's discharge under section 727(a)(2)(A) despite the fact that mortgages and tax liens on the property transferred exceeded its fair market value so that, even without the transfer, the creditors were deprived of no assets since the debtor had no equity in the property.[2] That court reasoned:

---

**1.** Appellant Don Davis asserts that if the property were sold by the Trustee, attorney's fees and expenses in bankruptcy proceedings would totally consume any equity remaining after payment of the mortgage and deduction of Davis's $5,000.00 statutory exemption.

On the other hand, he argues, if the property were sold through a foreclosure sale, the proceeds of the sale would be less, and Davis's one-half of the equity remaining after payment of the mortgage would be an amount less than the exemption to which he is entitled.

Thus, according to Davis, regardless of how the property were disposed of, there would be no assets available for creditors.

**2.** Among other courts also holding that injury to creditors is irrelevant when deciding whether to deny a discharge based on a debtor's effort to defraud a creditor, see *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986); *In re Feynman*, 77 F.2d 320, 322 (2d Cir.1935); *In re Steinberg*, 4 B.R. 593, 597 (Bankr.D.Mass.1980). For courts holding that discharge should be granted, notwithstanding the fraudulent nature of a transfer, unless the transfer harms creditors by depriving them of an asset actually available to them in bankruptcy, see *In re Jones*, 97 B.R. 36, 38 (Bankr.D.Mont.1989); *In re MacDonald*, 50 B.R. 255, 258 (Bankr.D.Mass.1985); *In re Harris*,

When appellant transferred his interest in the residence to his wife, he obviously intended to shield what he thought was valuable property from the claims of his creditors. To hold now that there occurred no transfer of property with the intent to hinder creditors merely because the debts on the residence exceeded its estimated fair market value would be to reward appellant for his wrongdoing, which the court refuses to do.

26 B.R. at 1009.

The Debtor/Appellant next argues the district court erred in affirming the denial of the Debtor/Appellant's discharge under section 727(a)(2)(A) since the property fraudulently conveyed to his wife was recovered prior to his filing bankruptcy. The Debtor/Appellant relies principally on *In re Adeeb*, 787 F.2d 1339 (9th Cir.1986), for the proposition that, as used in section 727(a)(2)(A), the word "transferred" should be read to mean "transferred and remained transferred" at the time a debtor files his bankruptcy petition. Despite the clear, unambiguous language used in the statute, the *Adeeb* court reasoned that its reading of "transferred" was "most consistent with the legislative purpose of the section." 787 F.2d at 1344. The court wrote that such a reading would "encourage honest debtors to recover property they have transferred during the year preceding bankruptcy" and serve to facilitate "the equitable distribution of assets among creditors by ensuring that the trustee has possession of all of the debtor's assets." *Id.* at 1345. The court added that this readily allowed the "honest debtor to undo his mistakes and receive his discharge." *Id.* Finally, the court noted its reliance on the practical aspects of such a situation:

It is not uncommon for an uncounseled or poorly counseled debtor faced with mounting debts and pressure from his creditors to attempt to protect his property by transferring it to others. Upon later reflection or upon obtaining advice from experienced bankruptcy counsel, the debtor may realize that his original transfer of the property was a mistake. If the debtor is informed that his mistake bars him from a discharge in bankruptcy, he will have no incentive to attempt to recover the property or to reveal its existence to his creditors. Rather, he will have a strong incentive to continue to hide his assets.

*Id.*[3]

Normally, a court should interpret a statute in a manner consistent with the plain meaning of the language used in the statute. *Jones v. Metropolitan Atlanta Rapid Transit Authority*, 681 F.2d 1376, 1378 (11th Cir.1982) *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); *Fitzpatrick v. Internal Revenue Service*, 665 F.2d 327, 329 (11th Cir.1982). The statutory language of section 727(a)(2)(A) is plain and unambiguous. Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not. We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face. We therefore reject the approach initiated by the Ninth Circuit in *Adeeb*. We recognize that our holding may work hardship in some cases, perhaps this one, but we are compelled to apply statutory law as enacted by Congress.

AFFIRMED.

---

8 B.R. 88, 91 (Bankr.M.D.Tenn.1980); *In re McCloud*, 7 B.R. 819, 822 (Bankr.M.D.Tenn.1980).

We point out that in cases such as this one, the creditor is harmed whether or not any equity exists in the property transferred that may come into the estate. The creditor presumably incurred legal fees and expenses when he brought an action challenging the fraudulent transfer.

**3.** Even among courts that follow *Adeeb*, and indeed in that case itself, it has been held that reliance on an attorney's bad advice to transfer assets to avoid losing them to creditors can be asserted to avoid denial of discharge only when that advice is sought in good faith.